*ORAL ARGUMENT NOT YET SCHEDULED*

**Nos. 23-1175 and 23-1222**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CITY OF PORT ISABEL, *ET AL.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

---

TEXAS LNG BROWNSVILLE LLC

*Respondent-Intervenor.*

---

On Petitions for Review of Orders of the Federal Energy Regulatory Commission

---

## BRIEF OF RESPONDENT-INTERVENOR
## TEXAS LNG BROWNSVILLE LLC

---

Michael R. Pincus
Paul Korman
Mosby Perrow
Van Ness Feldman, LLP
2000 Pennsylvania Ave., NW, Ste. 6000
Washington, D.C. 20006
Phone:  (202) 298-1800
Fax:  (202) 338-2416
Email:  mrp@vnf.com
Email:  pik@vnf.com
Email:  mperrow@vnf.com

*Attorneys for Texas LNG Brownsville LLC*

Initial Brief:  February 20, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.      Parties, Intervenors, and *Amici Curiae***

To counsel's knowledge, all parties, intervenors, and *amici curiae* appearing in this Court and before the Federal Energy Regulatory Commission are listed in the Joint Opening Brief of Petitioners.

**B.      Rulings Under Review**

References to the rulings at issue appear in the Joint Opening Brief of Petitioners.

**C.      Related Cases**

References to some of the issues raised in this case that are similar to the issues raised in related cases appear in the Joint Opening Brief of Petitioners.

<div style="margin-left:40%">

*/s/ Michael R. Pincus*
Michael R. Pincus
Van Ness Feldman, LLP
2000 Pennsylvania Ave., NW, Ste. 6000
Washington, D.C. 20006
Phone:  (202) 298-1800
Email:  mrp@vnf.com

*Attorney for Texas LNG Brownsville LLC*

</div>

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1 of the Rules of this Court, Texas LNG Brownsville LLC ("Texas LNG") submits the following required Disclosure Statement:

Texas LNG is a limited liability company of which Brownsville LNG OpCo, LLC ("Brownsville LNG") is the managing member of Texas LNG. Brownsville LNG is a Delaware limited liability company with its principal place of business in The Woodlands, Texas. Brownsville LNG is wholly owned by Brownsville LNG Holdings, LLC, which is also a Delaware limited liability company with its principal place of business in The Woodlands, Texas. No public company owns more than 10% of its stock.

Pursuant to the requirement of Circuit Rule 26.1(b) that movants provide a statement of general nature and purpose relevant to the litigation, Texas LNG hereby states as follows: Texas LNG is a Delaware limited liability company with its principal place of business in Houston, Texas. It is a liquefied natural gas company developing a liquefied natural gas export facility to be located in Brownsville, Cameron County, Texas.

_/s/ Michael R. Pincus_
Michael R. Pincus
Van Ness Feldman, LLP
2000 Pennsylvania Ave., NW, Ste. 6000
Washington, D.C. 20006
Phone:  (202) 298-1800
Email:  mrp@vnf.com

_Attorney for Texas LNG Brownsville LLC_

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.................................... ii

TABLE OF CONTENTS...................................................................................iv

TABLE OF AUTHORITIES .............................................................................vi

GLOSSARY......................................................................................................x

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF FACTS ................................................................................1

    I.    Introduction .........................................................................................1

    II.   Texas LNG Project.............................................................................2

    III.  FERC's Comprehensive Review ........................................................3

    IV.  The Court's Focused Remand............................................................4

    V.   FERC's Action on Remand.................................................................6

        A.   FERC's Remand Order ................................................................8

           1.  FERC Properly Addressed Whether the Social Cost of Carbon Was Generally Accepted in the Scientific Community. .........................8

           2.  FERC Reevaluated Impacts on Environmental Justice Communities. ...................................................................9

        B.   2023 Rehearing Order .......................................................10

SUMMARY OF ARGUMENT ...............................................................12

STANDARD OF REVIEW ....................................................................14

ARGUMENT ..........................................................................................15

    I.    FERC Fully Complied With the Court's Remand and Properly Found the Project Is Not Inconsistent with the Public Interest...............................15

        A.   FERC Properly Explained that the Social Cost of Carbon Tool Is Not Generally Accepted for the Purposes of 40 C.F.R. § 1502.21.....15

        B.   FERC Properly Analyzed the Project's Impacts on Environmental Justice Communities on Remand. ......................................20

        C.   FERC Revisited Its Public-Interest Determination Reasonably Continuing to Find the Project Is Not Inconsistent With the Public Interest. ...................................................................25

II.   FERC Conducted a Reasonable Remand Process. ....................................26

    A.   FERC Engaged in a Comprehensive Review on Remand. .................27

    B.   FERC Was Not Required to Prepare a Supplemental EIS.................28

III.  The Remaining Issues Raised on Appeal Are Outside the Scope of the Court's Remand. ........................................................................................34

    A.   FERC Properly Relied Upon the Brownsville Air Monitor...............34

    B.   FERC's Analysis of Ozone Impacts Was Upheld Previously and Is Outside the Scope of the Remand. ......................................................35

IV.  Petitions Should Be Denied But if the Court Grants the Petitions the Remedy Should be Remand Without *Vacatur*............................................36

CONCLUSION ....................................................................................................39

STATUTORY ADDENDUM ............................................................................. S-1

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

*Allied-Signal, Inc. v. NRC*,
   988 F.2d 146 (D.C. Cir. 1993) .................................................... 36, 37

*American Great Lakes Ports Ass'n v. Schultz*,
   962 F.3d 510 (D.C. Cir. 2020) .................................................... 36

*Center for Biological Diversity v. FERC*,
   67 F.4th 1176 (D.C. Cir. 2023) .................................................. 18

*Chamber of Commerce v. SEC*,
   443 F.3d 890 (D.C. Cir. 2006) .................................................... 27

*City of Boston Delegation v. FERC*,
   897 F.3d 241 (D.C. Cir. 2018) .................................................... 16

*City of Olmsted Falls, Ohio v. FAA*,
   292 F.3d 261 (D.C. Cir. 2002) .................................................... 29

*Communities Against Runway Expansion, Inc. v. FAA*,
   355 F.3d 678 (D.C. Cir. 2004) .................................................... 23

*Delaware Riverkeeper Network v. FERC*,
   45 F.4th 104 (D.C. Cir. 2002) .............................................. 17-18

*EarthReports v. FERC*,
   828 F.3d 949 (D.C. Cir. 2016) .............................................. 17, 18

*Friends of Capital Crescent Trail v. FTA*,
   877 F.3d 1051 (D.C. Cir. 2017) .................................................. 29

*Idaho Sporting Congress Inc. v. Alexander*,
   222 F.3d 562 (9th Cir. 2000) ..................................................... 31

*Kleppe v. Sierra Club*,
   427 U.S. 390 (1976) .................................................................. 30

*Marsh v. Oregon Natural Resource Council*,
   490 U.S. 360 (1989) .................................................................. 30

*Neighbors of Cuddy Mountain v. U.S. Forest Service*,
   137 F.3d 1372 (9th Cir. 1998) ................................................... 31

*Panhandle Producers & Royalty Owners Ass'n v. Economic Regulatory Administration*,
 822 F.2d 1105 (D.C. Cir. 1987)...........................................................26

*Process Gas Consumers Group. v. FERC*,
 930 F.2d 926 (1991)..................................................................26, 27

*Sierra Club v. FERC*,
 867 F.3d 1357 (D.C. Cir. 2017).........................................................23

*Sierra Club v. FERC*,
 68 F.4th 630 (D.C. Cir. 2023) ("*Mountain Valley*"), *opinion vacated and superseded on other grounds*,
 No. 20-1512, 2023 WL 5537562 (D.C. Cir. Aug. 25, 2023) ......................29, 32

*Southeast Michigan Gas Co. v. FERC*,
 133 F.3d 34 (D.C. Cir. 1998)............................................................10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
 471 F. Supp. 3d 71 (D.D.C. 2020).................................................... 36-37

*Stand Up for California! v. DOI*,
 994 F.3d 616 (D.C. Cir. 2021)...........................................................29

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
 6 F.4th 1321 (D.C. Cir. 2021)................... 1, 5, 13, 15, 17, 25, 28, 32, 35, 37, 38

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
 No. 20-1045, *et al.*, 2021 WL 3716769 (D.C. Cir. Aug. 3, 2021) .......1, 4, 11, 28
 31, 35, 36

*Williston Basin Interstate Pipeline Co. v. FERC*,
 519 F.3d 497 (D.C. Cir. 2008)), *aff'd in part, rev'd in part*,
 985 F.3d 1032 (D.C. Cir. 2021)..........................................................37

*Wisconsin v. Weinberger*,
 745 F.2d 412 (7th Cir. 1984) ............................................................30

## ADMINISTRATIVE CASES

*Annova LNG Common Infrastructure, LLC*,
    169 FERC ¶ 61,132 (2019) ...................................................................4

*Baltimore Gas & Electric Co*.,
    91 FERC ¶ 61,270 (2000) ...................................................................34

*Barton Village, Inc*.,
    111 FERC ¶ 61,494 (2005) ..................................................................28

*Dominion Cove Point, LNG, LP*,
    126 FERC ¶ 61,238 (2009) ..................................................................28

*Florida Southeast Connection, LLC*,
    162 FERC ¶ 61,233, *reh'g denied*,
    164 FERC ¶ 61,099 (2018) ...........................................................17, 27

Maritime Administration, Record of Decision on the Deepwater Port License
    Application of SPOT Terminal Services LLC (Nov. 21, 2022),
    https://www.regulations.gov/document/MARAD-2019-0011-7890 .................19

*Mountain Valley Pipeline, LLC*,
    161 FERC ¶ 61,043 (2017), *order on reh'g*,
    163 FERC ¶ 61,197 (2018), *aff'd*, *Appalachian Voices v. FERC*,
    No. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 19, 2019) (unpublished) .. 16-17,
    18

*Northern Natural Gas Co.*,
    174 FERC ¶ 61,189 (2021) ..................................................................20

*Rio Grande LNG, LLC*,
    169 FERC ¶ 61,131 (2019) ....................................................................4

*Rio Grande LNG, LLC*,
    174 FERC ¶ 61,048 (2021) ..................................................................35

*Tennessee Gas Pipeline Co.*,
    180 FERC ¶ 61,205 (2022) ..................................................................17

*Tennessee Gas Pipeline Co.*,
    181 FERC ¶ 61,051 (2022) ..................................................................16

*Texas LNG Brownsville LLC*,
    169 FERC ¶ 61,130 (2019) ("Authorization Order"), *order on reh'g and stay*,
    170 FERC ¶ 61,139 (2020) ("2020 Rehearing Order")............................1, 2, 4, 5

*Texas LNG Brownsville LLC*,
    183 FERC ¶ 61,047 ("Remand Order"), *order on reh'g*,
    185 FERC ¶ 61,079 (2023) ("2023 Rehearing Order")...........2, 6, 7, 8, 9, 10, 11,
                                                    12, 13, 15, 16, 17, 19, 20, 21, 22,
                                                    23, 24, 25, 26, 30, 33, 34, 35, 36

**FEDERAL STATUTES AND REGULATIONS**

Natural Gas Act
    15 U.S.C. § 717b.........................................................................2, 13
    15 U.S.C. § 717r(b)......................................................................16, 23

18 C.F.R. § 380.10(a)(1)(i) ..................................................................33
18 C.F.R. § 385.713(c)(2) ...............................................................18, 31
18 C.F.R. § 385.214(d) .......................................................................33

Council on Environmental Quality,
    40 C.F.R. § 1502.9(d)(1)(i)–(ii)...........................................................29
    40 C.F.R. § 1502.21(c) ......................................................................5

National Environmental Policy Act
    42 U.S.C. §§ 4321–4370h...................................................................3

Texas LNG Brownsville LLC; Notice Seeking Public Comment on Responses to
    Information Requests,
    87 Fed. Reg. 60,679 (Oct. 6, 2022) .....................................................6

# GLOSSARY

| | |
|---|---|
| 2020 Rehearing Order | Texas LNG Brownsville LLC, 170 FERC ¶ 61,139 (2020) ("2020 Rehearing Order") (R.1403; J.A.____-____). |
| 2023 Rehearing Order | Texas LNG Brownsville LLC, 185 FERC ¶ 61,079 (2023) (R.1583; J.A.-____-____). |
| Application | Application of Texas LNG Brownsville LLC for Authorization Under Section 3 of the Natural Gas Act, Docket No. CP16-116-000 (Mar. 30, 2016; filed date Mar. 21, 2016) (R.748; J.A.____-____). |
| April 29 Data Response | Texas LNG's Supplemental Response to February 3, 2022 Environmental Information Request, Docket No. CP16-116-000 (Apr. 29, 2022; filed date May 2, 2022) (R.1455; J.A.____-____). |
| Authorization Order | Texas LNG Brownsville LLC, 169 FERC ¶ 61,130 (2019) ("Authorization Order") (R.1391; J.A.____-____), *order on reh'g and stay*, 170 FERC ¶ 61,139 (2020) ("2020 Rehearing Order") (R.1403; J.A.____-____). |
| CEQ | Council on Environmental Quality |
| Draft EIS | Texas LNG Project, Docket No. CP16-116-000 (Oct. 26, 2018) (R.1137; J.A.____-___). |
| EIS | Environmental Impact Statement |
| EPA | U.S. Environmental Protection Agency |
| FERC or Commission | Respondent, Federal Energy Regulatory Commission |
| FERC Br. | Brief for Respondent, Federal Energy Regulatory Commission, Nos. 23-1175, *et al.* (D.C. Cir. Feb. 12, 2024). |
| Final EIS | Texas LNG Project, Docket No. CP16-116-000 (Mar. 15, 2019) (R.1374; J.A.____-___). |

| | |
|---|---|
| GHG | Greenhouse Gas |
| J.A. | Citations to the Joint Appendix |
| January 30 Data Response | Texas LNG Response to January 6, 2023, Environmental Information Request (Jan. 20, 2023) (R.1553; J.A.____-____). |
| LNG | Liquefied Natural Gas |
| *Mountain Valley* | *Sierra Club v. FERC*, 68 F.4th 630, 649 (D.C. Cir. 2023), *opinion vacated and superseded on other grounds*, No. 20-1512, 2023 WL 5537562 (D.C. Cir. Aug. 25, 2023). |
| MTPA | Metric Ton Per Annum |
| NAAQS | National Ambient Air Quality Standards |
| NGA | Natural Gas Act |
| NEPA | National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h. |
| P | Paragraph in a Commission order. |
| Petitioners | City of Port Isabel, Sierra Club, and Vecinos para el Bienestar de al Comunidad Costera |
| Pet'rs' Br. | Petitioners' Joint Rule 30(c) Proof Opening Brief, Nos. 23-1175, *et al.* (D.C. Cir. Dec. 13, 2023). |
| Project | Texas LNG's 4.0 MTPA LNG export terminal for the liquefaction and export of domestically produced natural gas at a proposed LNG terminal on the north side of the Brownsville Ship Channel in Cameron County, Texas. |
| R. | Item in the Certified Index to the Record |
| Remand Order | *Texas LNG Brownsville LLC*, 183 FERC ¶ 61,047 ("Remand Order"), R.1564 (J.A.____-____), *order on reh'g*, 185 FERC ¶ 61,079 (2023) ("2023 Rehearing Order") (R.1583; J.A.____-____). |

| | |
|---|---|
| Respondent-Intervenor | Texas LNG Brownsville LLC |
| Sierra Club October Comments | Public Comments for Rio Grande/Texas LNG, Docket Nos. CP16-454-000, *et al.* (Oct. 21, 2022) (R.1523; J.A.____-____). |
| Sierra Club Rehearing Request | Request for Rehearing of Vecinos para el Bienestar de la Comunidad Costera, Sierra Club, and City of Port Isabel, Docket No. CP16-116-002 (May 22, 2023) (R.1569; J.A.____-____). |
| Texas LNG | Respondent-Intervenor, Texas LNG Brownsville LLC |
| Vecinos | Vecinos para el Bienestar de la Comunidad Costera |
| *Vecinos I* | *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021). |
| *Vecinos II* | *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, Nos. 20-1045, *et al.*, 2021 WL 3716769 (D.C. Cir. Aug. 3, 2021) (per curium). |

## STATEMENT OF THE ISSUES

Respondent-Intervenor Texas LNG Brownsville LLC ("Texas LNG") adopts the Statement of the Issues set forth in the Brief for Respondent Federal Energy Regulatory Commission ("FERC" or the "Commission") (at 5-6).

## STATEMENT OF FACTS

### I.    Introduction

This is the second time this case has come before the Court.  Previously, this Court remanded—but did not vacate—FERC's authorization of the Texas LNG Project ("Project"), a 4.0 metric ton per annum ("MTPA") liquefied natural gas ("LNG") export terminal to be located in Brownsville, Texas.  This Court sent the original authorization orders, *Texas LNG Brownsville LLC*, 169 FERC ¶ 61,130 (2019) ("Authorization Order") (R.1391; J.A.____-____), *order on reh'g and stay*, 170 FERC ¶ 61,139 (2020) ("2020 Rehearing Order") (R.1403; J.A.____-____), back to FERC to address two narrow questions, finding "it reasonably likely that on remand [FERC] can redress its failure of explanation . . . while reaching the same result." *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021) ("*Vecinos I*").  At the same time, the Court, in a separate unpublished opinion, denied the petitions for review on all other grounds.  *See Vecinos para el Bienestar de la Comunidad Costera v. FERC*, Nos. 20-1045, *et al.*, 2021 WL 3716769 (D.C. Cir. Aug. 3, 2021) (per curium) ("*Vecinos II*").

1

On remand, FERC addressed the Court's two focused questions and "affirm[ed] its earlier determinations that the Texas LNG Project is not inconsistent with the public interest." *Tex. LNG Brownsville LLC*, 183 FERC ¶ 61,047, at Ordering Para. (A) (2023) ("Remand Order") (R.1564; J.A.____), *order on reh'g*, 185 FERC ¶ 61,079 (2023) ("2023 Rehearing Order") (R.1583; J.A.____-____). Nothing more was required.

## II.    Texas LNG Project

Texas LNG filed an application on March 30, 2016, with FERC, pursuant to Section 3 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717b, for authorization to site, construct and operate facilities for the liquefaction and export of domestically produced natural gas at a proposed LNG terminal on the Brownsville Ship Channel in Cameron County, Texas.  Texas LNG Application at 3-4 (R.748; J.A.____-____). The Project consists of two LNG storage tanks, two 2.0 MTPA capacity liquefaction trains, an LNG carrier berth; and mooring and loading facilities.  Authorization Order at P 5 (J.A.____).

Texas LNG plans to liquefy and export up to 4.0 MTPA of domestically produced natural gas, bringing jobs and investment to the local community, reducing global greenhouse gas ("GHG") emissions by providing a fuel source with significantly lower emissions than other fossil fuels, and strengthening the energy

security for U.S. allies throughout Europe and Asia.  Application at 14-18 (J.A.____-
____).

## III.   FERC's Comprehensive Review

FERC conducted a thorough analysis of the Project, including a year-long pre-
filing process and over three and a half years of review after Texas LNG filed its
Application.  Consistent with its National Environmental Policy Act ("NEPA"), 42
U.S.C. §§ 4321–4370h, responsibilities, FERC staff prepared a Draft Environmental
Impact Statement ("EIS"), and, after an opportunity for public comment, a Final EIS.
Draft EIS (Oct. 26, 2018) (R.1137; J.A.____-____); Final EIS (Mar. 15, 2019)
R.1374; J.A.____-____).  The Final EIS addressed a wide range of environmental
impacts, including geology, soils, water use and quality, wetlands, vegetation,
wildlife, aquatic resources, and essential fish habitat, threatened, endangered and
special status species, land use, recreation, and visual resources, socioeconomics,
cultural resources, air quality and noise, reliability and safety, and cumulative
impacts.  The Final EIS also quantified GHG emissions resulting from construction
and operation of the Project, and included a qualitative discussion of the impacts that
the Project would have on climate change.  Final EIS at 4-342–4-344 (J.A.____-
____).  In addition, the Final EIS evaluated potential environmental justice impacts
related to the Texas LNG Project.  *Id.* at 4-154–4-157 (J.A.____-____).  The Final
EIS concluded that, with the recommended mitigation measures, "impacts in the

project area would be avoided or minimized and would not be significant," with the exception of certain visual impacts. *Id.* at 5-358 (J.A.____).

FERC authorized the Project in November 2019, finding pursuant to Section 3 of the NGA that it was not inconsistent with the public interest. Authorization Order at P 21 (J.A.____). FERC adopted the Final EIS's mitigation recommendations finding that they were sufficient to reduce all adverse impacts from construction and operation of the Project to less than significant levels. *Id.* at P 18 (J.A.____-____). On the same day, the Commission authorized the Rio Grande LNG Terminal and the Rio Bravo Pipeline, *Rio Grande LNG, LLC*, 169 FERC ¶ 61,131 (2019), and the now-abandoned Annova LNG Terminal, *Annova LNG Common Infrastructure, LLC*, 169 FERC ¶ 61,132 (2019), in separate orders.

City of Port Isabel, Sierra Club, and Vecinos para el Bienestar de al Comunidad Costera ("Vecinos") (collectively, "Petitioners") sought rehearing of the Authorization Order, which the Commission denied. 2020 Rehearing Order at P 1 (J.A.____). Petitioners sought review for the first time in this Court.

## IV.    The Court's Focused Remand.

This Court denied the petitions related to the cumulative impacts of ozone from the three terminal projects and FERC's alleged failure to take a hard look at design changes of the Rio Grande LNG Project. *See Vecinos II*, 2021 WL 3716769. The Court also determined that FERC's analyses of the Project's impacts on climate

change and environmental justice communities were deficient and remanded—

without *vacatur*—the Authorization Order and the 2020 Rehearing Order. *See*

*Vecinos I*, 6 F.4th at 1325.

The Court instructed FERC to address two discrete questions on remand.

First, explain whether a Council on Environmental Quality's ("CEQ") regulation,

40 C.F.R. § 1502.21(c), requires the Commission to use the social cost of carbon

protocol or some other analytical framework, as "generally accepted in the scientific

community," and if not, why not. *Vecinos I*, 6 F.4th at 1329-30 (J.A.____-____).

Next, explain why FERC chose to analyze the Project's impacts on communities in

census blocks only within two miles of the Project site, or else analyze the Project's

impacts on communities within a different radius of the Project site. *Id.* at 1330-31

(J.A.____-____).  Based on these two discrete deficiencies, the Court also directed

FERC to "revisit" its public-interest determination under Section 3 of the NGA. *Id.*

at 1331-32 (J.A.____-____).  The Court recognized that it was "reasonably likely"

that FERC could redress these errors while reaching the same result, and remanded

the case without *vacatur*. *Id.* at 1332 (J.A.____).  Significantly, on remand, the Court

did not require FERC to prepare any specific studies, like a supplemental EIS, or

mandate any special procedures, like requesting public input.

## V.    FERC's Action on Remand.

On remand, FERC did precisely what the Court required, conducting a thorough review addressing the two remanded issues.  Over a year after the remand, FERC issued its first Environmental Information Request to Texas LNG on February 3, 2022 (R.1450; J.A.____-____); Texas LNG timely responded (R.1452; J.A.____-____); Remand Order at P 10 (J.A.____).  On August 16, 2022, the Commission issued another Environmental Information Request (R.1460; J.A.____-____).  Again, Texas LNG timely responded (R.1465; J.A.____-____).  On September 30, 2022, the Commission issued a Notice Seeking Public Comment on Responses to Information Requests, which was published in the Federal Register and served on the full Commission service list including Petitioners, requesting initial comments on Texas LNG's responses by October 21, 2022, and reply comments by November 4, 2022.  Remand Order at P 11 (J.A.____); *see also* Notice Seeking Public Comment (R.1468; J.A.____-____); 87 Fed. Reg. 60,679 (Oct. 6, 2022).

In response, Petitioners Sierra Club and Vecinos filed joint comments, arguing that FERC staff's data requests regarding air emissions required additional explanation or clarification.  Comments on Responses to Information Requests at 7-12 (Oct. 19, 2022) (R.1503; J.A.____-____); *see also* Remand Order at P 12 (J.A.____-____).  Commenters also made several other arguments regarding public input, offsite parking, emergency response planning, and visual resources.  Remand

6

Order at P 12 (J.A.____-____). Sierra Club filed additional comments on October 21, 2022. Public Comments for Rio Grande/Texas LNG (Oct. 21, 2022) ("Sierra Club October Comments") (R.1523; J.A.____-____). In addition, dozens of individuals, local officials, and community organizations filed comments supporting the Project.

On October 28, 2022 (R.1542; J.A.____-____), and January 6, 2023 (R.1551; J.A.____-____), the Commission issued a third and fourth Environmental Information Request, respectively, requesting additional information relating to air and GHG emissions. Some of FERC's questions were in direct response to Sierra Club's comments. *Compare* Sierra Club October Comments at 7 (J.A.____) (commenting on discrepancy between marine vessel hoteling versus maneuvering emissions) with FERC Environmental Information Request at 3 (Oct. 28, 2022) (J.A.____) (asking questions re: same). Texas LNG promptly responded. Response to October 28, 2022 Environmental Information Request (Nov. 7, 2022) (R.1547; J.A.____-____); Response to January 6, 2023, Environmental Information Request (Jan. 20, 2023) ("January 30 Data Response") (R.1553; J.A.____-____); *see also* Remand Order at P 10 (J.A.____). Sierra Club filed additional comments with FERC on March 22, 2023. Comments of Sierra Club and Community Leaders (R.1560; J.A.____-____).

**A.    FERC's Remand Order**

The Remand Order addressed this Court's questions and reaffirmed that the Project, as conditioned in the Authorization Order and with an additional condition in the Remand Order, is not inconsistent with the public interest.  Remand Order at P 2 (J.A.____-____).

> **1.    FERC Properly Addressed Whether the Social Cost of Carbon Was Generally Accepted in the Scientific Community.**

Regarding the Court's first directive—to explain whether section 1502.21(c) of CEQ's regulations requires FERC to apply the social cost of carbon protocol or some other analytical framework generally accepted in the scientific community, and if not why not—FERC explained that the social cost of carbon protocol, now updated to include GHGs, was not developed for project-level review and does not enable FERC to credibly determine whether the GHG emissions are significant. Remand Order at P 20 (J.A.____-____).  Accordingly, CEQ's regulations do not require FERC to use the tool in this proceeding.  *Id.*  FERC continued that it was not aware of any other analytical framework generally accepted by the scientific community that would enable FERC to determine the significance of reasonably foreseeable project specific GHGs.  *Id.* at PP 20-25 (J.A.____-____).  Nonetheless, for informational purposes, and consistent with current FERC practice, FERC quantified the Project's reasonably foreseeable GHG emissions and disclosed the

social cost of carbon (as updated to include other GHGs) for construction and operation of the Project. *Id.* at PP 22-24 (J.A.____-____).

### 2. *FERC Reevaluated Impacts on Environmental Justice Communities.*

With respect to this Court's second directive, the Commission reevaluated the impacts of the Project on environmental justice communities in a broader area. Remand Order at P 33 (J.A.____-____). FERC first determined that the most distant potential impacts would be associated with air quality approximately 50 kilometers away and established a 50-kilometer radius around the Project site as the appropriate geographic area for identification and analysis of Project impacts on environmental justice communities. *Id.* Within this impact radius, FERC conducted an in-depth updated analysis of potential impacts on environmental justice communities. *Id.* at PP 35-82 (J.A.____-____). FERC determined that despite robust visual impact mitigation measures, including implementation of a facility lighting plan and light-reduction techniques, potentially significant visual impacts would occur when people recreate in the Laguna Atascosa National Wildlife Refuge and that the Project would have a "negligible to moderate" impact on the other visual resources evaluated. *Id.* at PP 79-80 (J.A.____). FERC also concluded that visual impacts from the Project would be disproportionately high and adverse, and would be predominantly borne by environmental justice communities. *Id.* at P 82 (J.A.____). Notably, visual impacts are the only significant impacts of the project. *Id.* FERC

9

found that other Project-related impacts associated with wetlands, surface water, recreational and subsistence fishing, tourism, socioeconomics, traffic, noise, and air quality would be less than significant. *Id.*

FERC next revisited its earlier finding in the Authorization Order and reaffirmed that, as conditioned in the Authorization Order, and as further conditioned in the Remand Order, it "continue[d] to find that, under section 3 of the NGA, the Texas LNG Project is not inconsistent with the public interest." Remand Order at P 85 (J.A.____). Petitioners sought rehearing of the Commission's Remand Order. *See* Sierra Club Rehearing Request (May 22, 2023) (R.1569; J.A.____-____).

**B.     2023 Rehearing Order**

In the 2023 Rehearing Order, FERC properly declined to expand the scope of the remand proceeding beyond the Court's directives, addressed Petitioners' environmental justice and GHG evaluation arguments, dismissed arguments that a supplemental EIS was necessary, and again affirmed that the Project was not inconsistent with the public interest. FERC correctly declined to expand its consideration to a broader range of issues, explaining that it may reject arguments outside the scope of the remand. 2023 Rehearing Order at P 12 (J.A.____) (citing *Se. Mich. Gas Co. v. FERC*, 133 F.3d 34, 38 (D.C. Cir. 1998)). FERC also found that the public had a meaningful opportunity to review and comment on new

information, noting that it received over 100 comments in response to its notice seeking public comment. *Id.* at P 13 (J.A.____-____).

FERC explained that emission calculations for the facility were updated to reflect actual emission factors contained in the final permit issued by the Texas Council on Environmental Quality, updated U.S. Environmental Protection Agency ("EPA") emission factors and conversion rates, and updated stationary and mobile sources. 2023 Rehearing Order at P 15 (J.A.____-____). FERC also explained that the Brownsville monitor contained the appropriate data set to use because it is closer in proximity to environmental justice communities than the Isla Blanca monitor and was adequately representative to identify impacts to potentially affected population centers. *Id.* at P 17 (J.A.____-____). The Isla Blanca monitor was appropriately excluded from the air quality analysis because the monitor did not have the requisite three years of data needed to appropriately model emissions impacts. *Id.* FERC further declined to revisit its determination regarding ozone impacts, relying on this Court's explicit holding that "[FERC] was aware of and adequately considered the cumulative ozone effects when it decided to approve the three terminal projects[,]" and because the Commission had no reason to doubt the accuracy of the calculations provided by Texas LNG which demonstrated that the emissions fall below the National Ambient Air Quality Standards ("NAAQS") threshold for ozone. *Id.* at P 19 (J.A.___) (quoting *Vecinos II*, 2021 WL 3716769 at *1).

FERC also affirmed that it properly identified environmental justice communities within the relevant geographic area of review. *Id.* at P 25 (J.A.____-____). Additionally, FERC affirmed its holding and rationale that it had fulfilled its obligations under NEPA for evaluating the Project's GHG emissions. *Id.* at P 42 (J.A.____-____). FERC explained that it declined to prepare a supplemental EIS because the issues addressed on remand did not result in any new significance determinations, or significant impacts on air quality. 2023 Rehearing Order at P 31 (J.A.____-____). FERC reaffirmed its holding that the Project was not inconsistent with the public interest, explaining that for projects under NGA Section 3, "there is a presumption favoring authorization" and that "[n]one of the information analyzed and disclosed in our environmental analysis on remand" rebutted this presumption. *Id.* at P 37 (J.A.____-____).

## SUMMARY OF ARGUMENT

I.    FERC fully complied with the Court's limited remand, and properly reaffirmed that the Project is not inconsistent with the public interest, pursuant to Section 3 of the NGA.

FERC explained that the social cost of carbon tool is not generally accepted in the scientific community for FERC's project-level reviews. FERC has consistently made the same finding, and this Court has upheld those findings.

In compliance with the Court's remand, FERC addressed whether impacts from construction and operation of the Project would have disproportionately adverse on environmental justice communities. Remand Order at P 82 (J.A.____); *Vecinos I*, 6 F.4th at 1331. FERC analyzed the impacts of the projects on environmental justice communities based on a larger—50 kilometer—impact radius, consistent with the second option the Court offered FERC on remand. Based on this revised analysis of Project impacts on an expanded impact area, FERC concluded that, with the exception of some visual and cumulative visual impacts, the Project impacts would be below significant levels. To further abate cumulative air quality impacts on the environmental justice communities, FERC imposed an additional air quality monitoring and mitigation condition.[1]

Having addressed these two discrete issues, FERC revisited its previous public-interest determination, properly finding once again found that the Project, as conditioned, was not inconsistent with the public interest. Remand Order at Ordering Para. (A) (J.A.____); 15 U.S.C. § 717b. Nothing more was required.

II.    Petitioners raise several distinct challenges to FERC's orders, most of which are outside the scope of the remand. All are meritless.

FERC's process on remand was entirely reasonable. FERC has broad discretion to determine and conduct its own processes on remand. FERC carried out

---

[1] Remand Order, App. A, Environmental Condition No. 130 (J.A.____).

a robust process on remand fully addressing the Court's concerns. FERC issued several rounds of questions to Texas LNG and required Texas LNG to prepare and submit substantial analysis of the Project's impacts. Petitioners actively participated through the entire process, availing themselves of public comment opportunities.

A supplemental EIS was not required. There were no substantial changes to the Project or significant new circumstances or information that would require a supplemental EIS. The decision whether to prepare a supplemental EIS is committed to FERC's discretion, which is entitled to deference.

Petitioners' remaining arguments, with respect to whether FERC utilized data from the correct air quality monitor and ozone emissions are outside the scope of the remand. Nonetheless, FERC properly articulated that Petitioners' choice, the Isla Blanca air monitor, did not meet the necessary criteria to rely upon for its analysis. Arguments with respect to ozone emissions were previously addressed and dismissed by this Court in *Vecinos II* and may not be raised again.

III.    This Court should hold that FERC fully complied with the remand. However, if this Court determines that remand is appropriate, the Court should do so without vacating the orders. Doing so would have severe disruptive effects on the Project and Texas LNG's ability to commercialize and construct the Project.

## STANDARD OF REVIEW

Intervenors adopt the standard of review stated in FERC's brief (at 26-28).

# ARGUMENT

## I.    FERC Fully Complied With the Court's Remand and Properly Found the Project Is Not Inconsistent with the Public Interest.

The Court's remand was focused on two discrete issues, which FERC thoroughly addressed on remand.  Petitioners, nonetheless, attack FERC's analysis and attempt to expand the scope of the remand with irrelevant and extraneous arguments.  FERC complied with the Court's instructions, fulfilling the Court's prediction that it was "reasonably likely that on remand the Commission can redress its failure." *Vecinos I*, 6 F.4th at 1332.

### A.    FERC Properly Explained that the Social Cost of Carbon Tool Is Not Generally Accepted for the Purposes of 40 C.F.R. § 1502.21.

The Court directed FERC to address the applicability of 40 C.F.R. § 1502.21(c) in the context of the social cost of carbon tool.  That is precisely what FERC did.  FERC explained that "The social cost of carbon protocol, now updated to calculate the social cost of specific GHGs, is an administrative tool intended to quantify, in dollars, estimates of long-term damage that may result from future emissions of carbon dioxide, nitrous oxide, and methane."  Remand Order at P 20 (J.A.____-____) (internal footnote omitted).  FERC found that "because the social cost of GHGs tool was not developed for project level review [it] . . . does not enable the Commission to credibly determine whether the GHG emissions are significant,

15

section 1502.21 of the CEQ regulations does not require its use in this proceeding." *Id.*

This is all that was required by the Court with respect to 1502.21(c) on remand. Any additional analysis by FERC, including the estimate of the social cost of carbon related to the Project's emissions that FERC calculated for informational purposes, was not required for compliance with the Court's remand.

Petitioners argue on appeal that the social cost of carbon tool is "generally accepted," based, in part, on new arguments not previously put before the Commission. Neither Sierra Club nor any other party argued before FERC that the tool was generally accepted by the scientific community. *See* Sierra Club Rehearing Request at 5, 6-8, 30-33 (J.A.____, ____-____, ____-____). Accordingly, Petitioners are barred from doing so here. *City of Bos. Delegation v. FERC*, 897 F.3d 241, 250 (D.C. Cir. 2018) ("for this court to have jurisdiction under the [NGA] to consider an issue, the party seeking review must have presented the same issue to [FERC] in an application for rehearing") (citing 15 U.S.C. § 717r(b)).

On the merits, FERC has consistently found that the social cost of carbon tool is not appropriate in determining the significance of GHG emissions for project-level reviews. Remand Order at P 20 (J.A.____-____) (citing *Tenn. Gas Pipeline Co.*, 181 FERC ¶ 61,051, at P 37 (2022); *see also Mountain Valley Pipeline, LLC*, 161 FERC ¶ 61,043, at P 296 (2017), *order on reh'g*, 163 FERC ¶ 61,197, at PP 275-97

(2018), *aff'd*, *Appalachian Voices v. FERC*, No. 17-1271, 2019 WL 847199, at 2 (D.C. Cir. Feb. 19, 2019) (unpublished); *EarthReports v. FERC*, 828 F.3d 949, 956 (D.C. Cir. 2016); *Tenn. Gas Pipeline Co.*, 180 FERC ¶ 61,205, at P 75 (2022)).  The Commission has explained that:

> It is true that the Social Cost of Carbon is a tool intended to estimate incremental physical climate change impacts.  And we do not dispute that it is generally accepted in the scientific community and *can play an important role in different contexts, such as rulemaking proceedings*.  But in this case, monetizing GHG emissions is not helpful given there is no context for those monetized costs.

*Fla. Se. Connection, LLC*, 164 FERC ¶ 61,099, at P 35 (2018) (emphasis added and citations omitted) (cited in *Vecinos I*, 6 F.4th at 1329).

As it has previously, FERC explained in the Remand Order that the social cost of carbon tool is not useful in the context of its review of infrastructure projects. Having made this finding, FERC also explained that it is not "aware of any other currently scientifically accepted method"—and Petitioners point to none—"that would enable the Commission to determine the significance of reasonably foreseeable GHG emissions."  Remand Order at P 20 (J.A.____-____); 2023 Rehearing Order at P 42 (J.A.____-____).

The Remand Order also is consistent with FERC orders affirmed by this Court.  Remand Order at P 20 (J.A.____-____) ("The D.C. Circuit has repeatedly upheld the Commission's decisions not to use the social cost of GHGs, including to assess significance.") (citing *EarthReports*, 828 F.3d at 956; *Del. Riverkeeper*

17

*Network v. FERC*, 45 F.4th 104 (D.C. Cir. 2002); *Appalachian Voices*, 2019 WL 847199). *See also Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1188 (D.C. Cir. 2023).

Petitioners now cite several examples where it claims an agency used the social cost of carbon for project-level reviews. Again, Petitioners did not previously raise examples before the Commission on remand or rehearing. Pet'rs' Br. at 47-49. This failure is fatal to their position. *See* 18 C.F.R. § 385.713(c)(2) (requiring parties seeking rehearing to include representative precedent on which they are relying).

On the merits, the cited examples do not support their arguments. In *Mountain Valley Pipeline*, 163 FERC ¶ 61,197 at P 281, FERC did not use the social cost of carbon tool for a project-level review, explaining that it was "more appropriately used by regulators whose responsibilities are tied more directly to fossil fuel production or consumption" and cited examples of other agencies such as the Bureau of Land Management and the Bureau of Ocean Energy Management. *Id*. FERC explained there that its authority "has no direct connection to the production or end use of natural gas." *Id*. at P 282. That is doubly true here, where the Department of Energy, not FERC, is responsible for the authorization of LNG exports from the Project. *EarthReports*, 828 F.3d at 956.

Failing to find compelling examples before FERC, Petitioners seemingly scour actions by other agencies looking for instances where agencies relied upon the

social cost of carbon as part of a project-level review. Two examples cited by Petitioners, also not raised before FERC, relate to programmatic EISs for offshore leasing programs, not project-specific agency review. *See* Pet'rs' Br. at 48 n.8 (citing Bureau of Land Management, Draft Supplemental EIS for the Coastal Plain Oil and Gas Leasing Program and Bureau of Ocean Energy Management, Final Programmatic EIS of the 2024-2029 National Outer Continental Shelf Oil and Gas Leasing Program). Accordingly, these cases are not on point and do not support Petitioners' position.

The final example cited by Petitioners, again for the first time, is a project-level review by the Maritime Administration of the Sea Port Oil Terminal Deepwater Port Project, *see* Pet'rs' Br. at 48 n.8, performed in a manner that mirrors and actually supports FERC's approach to the social cost of carbon tool in this case. There, the Maritime Administration calculated and disclosed the social cost of carbon calculation in its EIS, but the calculation was not used as part of its substantive decision to approve the terminal in the agency's record of decision.[2] This is precisely the way in which FERC uses the social cost of carbon in this case for the Project, calculating and disclosing it for informational purposes. Remand Order at P 21 (J.A.____).

---

[2] *See* Maritime Administration, Record of Decision on the Deepwater Port License Application of SPOT Terminal Services LLC (Nov. 21, 2022), https://www.regulations.gov/document/MARAD-2019-0011-7890.

19

Similarly, Petitioners' argument that FERC was required to consider other analytical methods besides the social cost of carbon falls flat. Sierra Club has not identified any other tool the Commission should have used or considered, other than making an "ad-hoc" determination. Petitioners' reliance on one FERC case that made a finding of no significant impact for GHG emissions is misplaced because the emissions there were truly minimal, and FERC did not use any generally accepted methodology in that case. FERC Br. at 48 (citing *N. Nat. Gas Co*., 174 FERC ¶ 61,189 (2021)). Furthermore, FERC's one-time proposed and now-suspended 100,000 tons per year of carbon dioxide equivalent was not based on a generally accepted methodology, but was proposed "as a matter of policy." Remand Order at P 25 n.64 (J.A.____). That is certainly not an "other analytical method" the Commission was required to consider.

### B.    FERC Properly Analyzed the Project's Impacts on Environmental Justice Communities on Remand.

With respect to environmental justice, this Court directed FERC simply to "explain why it chose to analyze the projects' impacts only on communities in census blocks within two miles of the project sites, or else analyze the projects' impacts on communities within a different radius of each project site" and then to determine whether the Commission's environmental justice conclusion still holds. *Vecinos I*, 6 F.4d at 1331.

20

FERC followed the second option.  FERC conducted a revised analysis of the projects' impacts on communities within 50 kilometers from the Project and "include[d] an updated analysis of impacts on environmental justice communities using [the] expanded radius."  Remand Order at P 35 (J.A.____).  Within this radius, FERC conducted an in-depth updated analysis of potential impacts, *id*. at PP 35-82 (J.A.____-____), and found that only certain visual impacts from construction and operation of the Project would be disproportionately high and adverse and borne by environmental justice communities.  *Id.* at P 82 (J.A.____).  FERC also found that all other Project-related impacts associated with wetlands, surface water, recreational and subsistence fishing, tourism, socioeconomics, traffic, noise, and air quality would be less than significant.  Remand Order at P 82 (J.A.____).  FERC explained that with respect to air emissions, "[t]he greatest potential for cumulative construction emissions impacts between Texas LNG and Rio Grande would be during years over [*sic*] overlapping construction."  *Id*. at P 72 (J.A.____-____).

In order to minimize and, if needed, mitigate the effects of these potentially overlapping activities, FERC imposed a new and novel condition on its authorization, "requiring Texas LNG to prepare a Project Ambient Air Quality Monitoring and Mitigation Plan as Environmental Condition 130 in Appendix A of this order, and a similar plan for Rio Grande LNG."  *Id*.  Based in part on this new

condition, FERC reasonably "conclude[d] that cumulative construction air quality impacts on environmental justice communities would be less than significant." *Id.*

The Remand Order also includes detailed tables and figures which identify all environmental justice communities within a 50-kilometer radius of the Project using census block data to identify which environmental justice communities would be affected by Project emissions. *Id.*, App. B (J.A.____-____).  The analysis, based on Texas LNG's responses to FERC, included updated cumulative emissions from both the Project and the Rio Grande LNG Terminal, and provided worst-case concentration scenarios that were then compared to the NAAQS.[3]  No emissions exceeded the NAAQS.  January 30 Data Response 2 (J.A.____).  FERC concluded that the Project "would be in compliance with the NAAQS during operations" explaining that "the NAAQS are designated to protect sensitive populations." Remand Order at P 75 (J.A.____-____) (internal footnote omitted).   FERC, therefore, reasonably concluded that "environmental justice communities would not experience significant air quality impacts during operation of the Texas LNG Project." *Id.*

On rehearing, FERC reiterated its findings that the operation of the Project, when combined with other projects in the areas, would not cause or contribute to an

---

[3] As noted by FERC, due to its relative scale, the Project's nitrogen oxide emissions, an ozone precursor, are only 10% of the emissions from the Rio Grande Project. Remand Order at P 74 (J.A.____-____) (citing Final EIS at 4-339 (J.A.____-____)).

exceedance of the NAAQS and that, therefore, environmental justice communities would not experience significant air quality impacts from the operation of the Project.  2023 Rehearing Order at P 23 (J.A.____-____).  This Court has affirmed FERC's use of the NAAQS as a comparative metric in its NEPA analyses.  *Sierra Club v. FERC*, 867 F.3d 1357, 1370 n.7 (D.C. Cir. 2017) ("FERC appropriately relied on EPA's [NAAQS] as a standard of comparison for air-quality impacts").  FERC's "choice among reasonable analytical methodologies is entitled to deference from this court."  *Communities Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 689 (D.C. Cir. 2004).

Petitioners also argue, for the first time, that FERC failed to address whether air emissions would have a disproportionate and adverse effect on environmental justice communities.  Pet'rs' Br. at 36-39.  Again, Petitioners did not raise this direct issue on rehearing before FERC and are barred from raising the argument now.[4]  In any event, the argument misstates the record and misses the mark.

FERC provided an in-depth analysis of air emissions and assessed air quality impacts from the Project on the relevant environmental justice communities.  *See* Remand Order at PP 66-77 (J.A.____-____).  FERC concluded that air quality impacts from the Project on environmental justice communities, with the imposition

---

[4] None of the arguments raised in Section III.A. of Petitioners' brief were first "urged before the Commission in the application for rehearing."  15 U.S.C. § 717r(b).

of the new Environmental Condition requiring an air quality monitoring and mitigation plan, would be less than significant. *Id.* at P 71 (J.A.____). Imposition of this condition, which requires the preparation of a Project Ambient Air Quality Mitigation and Monitoring Plan, will keep Project emissions from contributing to an exceedance of the NAAQS. *Id.* at P 70 (J.A.____). FERC also noted that since the nearest residences were over a mile and a half from the Project site, concurrent emissions from the Project and the Rio Grande LNG Terminal "would be unlikely to adversely impact air quality in residential areas" although community members recreating near the terminal may experience adverse air quality impacts. Remand Order at P 72 (J.A.____-____).

The only significant impact of the Project is visual. FERC acknowledged that despite visual impacts mitigation measures like implementation of a facility lighting plan and light reduction techniques, these impacts would be disproportionately high and adverse and predominately borne by the environmental justice communities. *Id.* at PP 82-83 (J.A.____). Specifically, FERC concluded that communities in the areas near the Texas LNG Project may experience significant visual impacts, but that "all other project-related impacts would be less than significant." *Id.* at P 83 (J.A.____). Accordingly, FERC properly addressed whether Project impacts would be disproportionate and adverse. *Id.* at PP 72, 75, 82-83 (J.A.____, ____, ____-____).

The only authority Petitioners rely upon to support their argument here is the EPA working group's report, *Promising Practice for EJ Methodologies in NEPA Reviews* (March 2016),[5] which is not a regulation or law, has never been subject to the notice-and-comment rulemaking procedures, and is not binding on FERC. But, having (1) conducted an in-depth analysis of air quality, *see* Final EIS 4-163—4-187 (J.A.____-____), Remand Order at PP 66-77 (J.A.____-____); 2023 Rehearing Order at PP 14-28 (J.A.____-____), (2) imposed a new Environmental Condition to mitigate air quality impacts, (3) concluded the Project would not cause significant air quality impacts, and (4) determined the Project would have disproportionate and adverse impacts on environmental justice communities, due to visual impacts, FERC is not compelled to otherwise make a finding for air emissions individually. *See Promising Practices* at 38 (noting that significance may be a factor in determining if impacts are disproportionate and adverse but an agency "may determine that impacts are disproportionately high and adverse, but not significant").

## C. FERC Revisited Its Public-Interest Determination Reasonably Continuing to Find the Project Is Not Inconsistent With the Public Interest.

The Court directed FERC on remand, after addressing the two specific issues, to reconsider its determination under Section 3 of the NGA. *Vecinos I*, 6 F.4th at

---

[5] EPA, *Promising Practice for EJ Methodologies in NEPA Reviews* (Mar. 2016), https://www.epa.gov/sites/default/files/2016-08/documents/nepa_promising_practices_document_2016.pdf.

1331.  FERC did just that.  FERC revisited its public-interest determination and once again found that the Project, as conditioned in the Authorization Order and as modified by its Remand Order, "is an environmentally acceptable action."  Remand Order at P 84 (J.A.____-____).  FERC concluded that the Project met the statutory standard of not being inconsistent with the public interest.  *Id.* at Ordering Para. (A) (J.A.____).  *See Panhandle Producers & Royalty Owners Ass'n v. Econ. Regul. Admin*., 822 F.2d 1105, 1111 (D.C. Cir. 1987) ("§ 3 requires an affirmative showing of inconsistency with the public interest to *deny* an application").  That was all FERC was required to do.

## II.    FERC Conducted a Reasonable Remand Process.

Petitioners argue that FERC's process on remand was insufficient, and that FERC was required to prepare a supplemental EIS and provide for more robust public participation.  However, the Court did not prescribe any specific process on remand, and FERC has broad discretion to conduct its own processes on remand.  *See Process Gas Consumers Grp. v. FERC*, 930 F.2d 926, 929 (1991).  FERC's process included the opportunity for public comment; indeed, Sierra Club submitted an extra set of comments even after the deadline set by FERC.  Nor was FERC required to prepare a supplemental EIS.

### A.    FERC Engaged in a Comprehensive Review on Remand.

The requirements of an agency following *vacatur* vary depending on the specific instructions of the court.  For instance, in *Process Gas v. FERC*, this Court reviewed a FERC order in which FERC had rejected requests for additional discovery following a remand from the Court.  The Court focused on whether FERC had followed the Court's instructions.   The Court emphasized FERC's "broad discretion . . . to decide what procedures to use in fulfilling its statutory responsibilities," and found that its decision not to provide for discovery was reasonable.  *Process Gas*, 930 F.2d at 929 (citation omitted).  As this Court has explained, "[w]here the court does not require additional fact gathering on remand, . . . the agency is typically authorized to determine, in its discretion, whether such fact gathering is needed . . . and how it should be accomplished." *Chamber of Commerce v. SEC*, 443 F.3d 890, 900 (D.C. Cir. 2006).  That is precisely what happened here.

FERC's decision to focus its process on the issues remanded to FERC by the Court was entirely appropriate and reasonable.  FERC has explained that where other arguments were considered in the underlying orders and "the court either specifically affirmed these arguments or did not remand them to the Commission for further consideration" the Commission need not address those arguments.  *Fla. Se. Connection, LLC*, 162 FERC ¶ 61,233, at P 16, *reh'g denied*, 164 FERC ¶ 61,099.

27

*See also Dominion Cove Point, LNG, LP*, 126 FERC ¶ 61,238, at P 22 (2009); *Barton Village, Inc.*, 111 FERC ¶ 61,494, at P 12 (2005). This is particularly true here where the Court issued a separate opinion denying the petitions for review in all other respects. *See generally Vecinos II* (denying the petitions related to the need for a supplemental EIS based on an increase in capacity for the Rio Grande LNG Project, NEPA segmentation, impacts from project design changes, and cumulative ozone impacts). The issues raised by Petitioners that do not relate to the Court's two narrow questions are outside the scope of the remand and should be denied.

Here, this Court provided no specific procedural instructions to FERC. It simply "remand[ed] to the Commission without *vacatur* for further proceedings consistent with [the] opinion[,]" *Vecinos I*, 6 F.4th at 1332, leaving it to the Commission to determine the proper procedure on remand. Nothing in *Vecinos I* requires FERC to consider issues outside those remanded by the Court, gather specific information, or to follow a mandated process.

### B.    FERC Was Not Required to Prepare a Supplemental EIS.

FERC was also not required to prepare a supplemental EIS on remand. The applicable CEQ regulations provide that an agency must prepare a supplemental draft or final EIS "if a major Federal action remains to occur, and (i) The agency makes substantial changes to the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to

environmental concerns and bearing on the proposed action or its impacts."
40 C.F.R. § 1502.9(d)(1)(i)–(ii).  This case meets neither criterion.  According to
this Court, "a supplemental environmental impact statement 'must be prepared only
where new information "provides a *seriously* different picture of the environmental
landscape." ' "  *Sierra Club v. FERC*, 68 F.4th 630, 649 (D.C. Cir. 2023) ("*Mountain*
*Valley*"), *opinion vacated and superseded on other grounds*, No. 20-1512, 2023 WL
5537562 (D.C. Cir. Aug. 25, 2023) (quoting *Stand Up for Cal.! v. DOI*, 994 F.3d
616, 629 (D.C. Cir. 2021) (quoting *Friends of Cap. Crescent Trail v. FTA*, 877 F.3d
1051, 1060 (D.C. Cir. 2017))); *see also City of Olmsted Falls, Ohio v. FAA*, 292 F.3d
261, 274 (D.C. Cir. 2002).  That is not the case here.

Neither Texas LNG nor FERC has made substantial changes to the proposed
action, and there are no new circumstances or information that provides a seriously
different picture of the environmental landscape.  Petitioners certainly do not point
to any.  The Court's narrow remand is not "significant new circumstances" requiring
a supplemental EIS.  Further, nothing in the Remand Order, including the expanded
environmental justice analysis radius, qualifies as "significant . . . new information
relevant to environmental concerns and bearing on the proposed action or its
impacts" that requires the Commission to perform a supplemental EIS—and again,
Petitioners point to none.  40 C.F.R. § 1502.9(d)(1)(i)–(ii).  The expanded radius for
FERC's updated environmental justice analysis is just that, an expanded area of

analysis of essentially the same set of impacts from the Project. This is especially true where, after reviewing the relevant data from the previously prepared Draft and Final EISs and the supplementary information submitted by Texas LNG during the remand proceeding, FERC's order concludes "Project-related impacts associated with wetlands, surface water, recreational and subsistence fishing, tourism, socioeconomics, traffic, noise, and air quality would be less than significant." Remand Order at P 82 (J.A.____).

Ultimately, "[t]he determination as to whether a [supplemental EIS] is required is left to the discretion of the agency, just as the decision whether to file an initial EIS is also committed to the agency's discretion." *Wisconsin v. Weinberger*, 745 F.2d 412, 417 (7th Cir. 1984). Where the analysis of whether a supplemental EIS is necessary "requires a high level of technical expertise," the courts defer to "the informed discretion of the responsible federal agencies." *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 367 (1989) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)). The Court should defer to FERC here.

Notably, in the first appeal the Court rejected similar arguments. The petitioners at that time argued that FERC was required to prepare a supplemental EIS due to design changes in the Rio Grande LNG Terminal that would allow the project to produce more LNG than previously assumed by FERC. Petitioners' Final Joint Opening Brief, No. 20-1045, at 21 (D.C. Cir. Sept. 23, 2020). Despite this

change to the terminal, the Court dismissed petitioners' arguments. *Vecinos II*, 2021 WL 3716769 at *2. If the Court found there was no requirement for a supplemental EIS at that time where there were changes to a terminal's design that could alter Rio Grande LNG's project's impacts, there is certainly no requirement here where there have been no proposed changes to the Project or to its impacts.

Petitioners rely almost exclusively on *Idaho Sporting Congress Inc. v. Alexander*, 222 F.3d 562 (9th Cir. 2000) for the argument that FERC was required to prepare a supplemental EIS on remand. As an initial matter, Sierra Club did not cite or rely on that case in its rehearing request before FERC and its arguments here should be waived. 18 C.F.R. § 385.713(c)(2) (requiring parties seeking rehearing to include representative precedent on which they are relying). Even if the argument was not waived, the case is inapplicable. In *Idaho Sporting Congress*, the U.S. Court of Appeals for the Ninth Circuit instructions to the agency on remand were entirely different from this Court's instructions to FERC. In that case, the Ninth Circuit had previously required the Forest Service to perform additional studies on remand and halted logging activities until such studies were completed. *See Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1382 (9th Cir. 1998) (holding that "logging . . . is enjoined until such studies are satisfactorily completed"). In contrast, in *Vecinos I*, the Court did not *require* FERC to perform any additional studies; rather, it only required FERC to explain its decision-making better, finding it was

"reasonably likely that on remand the Commission can redress its failure of *explanation*." *Vecinos I*, 6 F.4th at 1332 (emphasis added).

The other case Petitioners rely upon, *Mountain Valley*, is also inapplicable for at least two reasons. First, *Mountain Valley* did not involve a remand of a FERC decision back to the agency. In that case, FERC was engaged in a new "action," issuing an order to extend the project's construction deadline. *Mountain Valley*, 68 F.4th at 635-36. In this case, there was no new action before FERC. Second, in *Mountain Valley*, FERC was faced with actual evidence of one type of environmental impact that was "substantially different than expected." *Id.* at 651. There is nothing "substantially different" here.

Petitioners complain that soliciting comments on Texas LNG's data response was not equivalent to soliciting comments on a supplemental EIS. As explained above, FERC was not required to prepare a supplemental EIS. Therefore, comparing the public input opportunities between a supplemental EIS and a notice soliciting public comments is a red herring.

Petitioners press the argument that FERC did not tell the public that it would not solicit additional comments, leaving open, in the Petitioners' telling, the possibility that FERC would seek additional comments. This is bald speculation. FERC, being under no requirement to prepare a supplemental EIS or otherwise seek public comment, was not required to seek *additional* comments beyond those called

for in the notice requesting comments.  There is no evidence that interested parties were somehow duped into not responding to FERC's public notice seeking comments because those parties thought there would be some future call for comments.

Petitioners complain that FERC provided 21 days for comments.  But, as noted, Sierra Club filed three sets of comments both during FERC's noticed comment period and outside the comment period.  Moreover, FERC accepted over 100 comments throughout the remand proceeding and addressed the relevant comments regardless of whether they were filed during the official comment period. Remand Order at P 15 (J.A.____-____).

Finally, Petitioners contend that had FERC prepared a supplemental EIS there would have been an opportunity for other people to intervene in the proceeding. Pet'rs' Br. at 28 (citing 18 C.F.R. § 380.10(a)(1)(i)).  But FERC regulations allow for untimely motions to intervene, *see* 18 C.F.R. § 385.214(d), which one sought. And there is no allegation that anyone wishing to be a party was denied the ability to request to become one.  Of course, the issue is beside the point since no supplemental EIS was required and parties and non-parties alike were free to file comments throughout the remand process.

### III.  The Remaining Issues Raised on Appeal Are Outside the Scope of the Court's Remand.

Petitioners continue to raise issues that were outside the scope of the Court's discrete questions on remand.  FERC correctly refused to consider these issues.  *See* Remand Order at P 16 (J.A.____) (noting that opposition to the Project, comments in support of the projects, requests for regulatory clarity, cultural resource concerns, including Tribal consultation concerns, biological resource concerns, including impacts on endangered species, wildlife and wildlife habitat, migratory birds, and coastal resources, and general statements about the Commission, LNG, and energy infrastructure were outside the scope of the remand).

### A.  FERC Properly Relied Upon the Brownsville Air Monitor.

Despite the Petitioners' objections, FERC appropriately relied upon the most relevant and consistent background air quality information for its analysis.

Petitioners are barred from arguing that FERC should have required Texas LNG to use a different Texas Commission on Environmental Quality air emissions monitor located on Isla Blanca, rather than the monitor located in Brownsville, Texas because Sierra Club only raised that argument for the first time before FERC on rehearing.  *See Balt. Gas & Elec. Co.*, 91 FERC ¶ 61,270, at p. 61,922 (2000).  During the 20-month period that the matter was *sub judice* at the Commission following the Court's remand, Sierra Club filed three comments in this docket, none of which contains this argument, or the evidence Petitioners appear to rely upon now.

34

Nonetheless, FERC addressed this argument in its 2023 Rehearing Order, explaining that the Isla Blanca air monitor was not appropriate for its analysis because that monitor did not have three years of consistent data to allow for proper analysis of modelled air quality impacts from the Project, and that the monitor FERC relied upon was actually closer to an environmental justice community. 2023 Rehearing Order at P 17 (J.A.____-____). Aside from labeling these arguments as "arbitrary," Petitioners offer no support for their assertions that FERC should have used the Isla Blanca monitoring data.

### B. FERC's Analysis of Ozone Impacts Was Upheld Previously and Is Outside the Scope of the Remand.

Petitioners' arguments related to ozone issues are also outside the scope of the remand because the Court upheld FERC's previous findings with respect to ozone. *Id.* at P 19 (J.A.____) (citing *Vecinos II*, 2021 WL 3716769 at *1).

Notably, since the pre-remand orders, the Rio Grande LNG terminal was redesigned, *Rio Grande LNG, LLC*, 174 FERC ¶ 61,048, at P 12 n.40 (2021), and plans to build the Annova LNG terminal were abandoned, *Vecinos I*, 6 F.4th at 1327, logically resulting in a reduction of overall cumulative ozone emissions. As part of the remand proceeding, Texas LNG calculated and submitted estimated ozone concentrations consistent with the EPA's Modeled Emission Rates for Precursors guidance, which has been adopted by the Texas Commission on Environmental Quality. April 29 Data Response 3 (at 6-11) (R.1455; J.A.____-____). Texas LNG

appropriately considered total Project emissions of nitrogen oxides and volatile organic compounds when estimating ozone concentrations. The Commission concluded that there would not be a significant cumulative impact with respect to 8-hour ozone during operation of the facility. 2023 Rehearing Order at P 19 (J.A.____). This finding is consistent with FERC's previous ozone analysis and conclusion, which this Court found "adequately considered the cumulative ozone effects." *Vecinos II*, 2021 WL 3716769 at \*4. Petitioners are barred from re-litigating a settled issue from the previous appeal.

## IV. Petitions Should Be Denied But if the Court Grants the Petitions the Remedy Should be Remand Without *Vacatur*.

As set forth above, FERC's orders are correct, well supported by the facts and the law, and should be upheld. However, if this Court determines for any reason that remand is appropriate, the Court should do so without vacating FERC's orders. Under the *Allied-Signal* standard, the Court first considers the "seriousness of the [order's] deficiencies," and, second, the likely "disruptive consequences" of *vacatur*. *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518-19 (D.C. Cir. 2020) (quoting *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)) (citations omitted) (internal quotation marks omitted).

Under the first prong, the Court determines "whether there is 'a significant possibility that the [agency] may find an adequate explanation for its actions' on remand." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 471 F. Supp. 3d

71, 79 (D.D.C. 2020) (quoting *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008)), *aff'd in part, rev'd in part*, 985 F.3d 1032 (D.C. Cir. 2021).  A cure on remand need not be certain; rather, the Court seeks only "a serious possibility that" the agency "will be able to substantiate its decision." *Allied-Signal*, 988 F.2d at 151.  Should the Court find a deficiency in this case, each of the alleged defects that Petitioner points to is readily curable on remand.  *Vecinos I*, 6 F.4th at 1332 ("We find it reasonably likely that on remand [FERC] can redress its failure of explanation . . . and its determinations of public interest and convenience . . . while reaching the same result.").

Remand without *vacatur* is also fully supported by the second factor because vacating the orders would have severely "disruptive consequences" for Texas LNG. *Allied-Signal*, 988 F.2d at 150-51.  Texas LNG, which has valid Department of Energy export permits,[6] has made significant progress on developing the Project. Texas LNG has signed an agreement with one new customer for part of the Project's capacity for 15 years.[7]  In addition, Texas LNG has also recently obtained significant

---

[6] *Texas LNG Brownsville LNG*, DOE/FE Docket No. 15-62-LNG, Order No. 3716 (Sept. 24, 2015) (Free Trade Agreement Nations Authorization); *Texas LNG Brownsville LNG*, DOE/FE Docket No. 15-62-LNG, Order No. 4489 (Feb. 10, 2020) (Non-Free Trade Agreement Nations Authorization).

[7] Press Release, Glenfarne Energy Transition, LLC, Glenfarne Energy Transition's Texas LNG Announces LNG Tolling Agreement With EQT (Jan. 11, 2024), https://www.glenfarneenergytransition.com/news/press-release-

other federal and state permits for the Project, is actively negotiating with construction and equipment providers, and is engaged in the project finance process[8] Any *vacatur* now would result in severe disruptions to Texas LNG's development of the Project. As this Court previously held when FERC's earlier authorization orders were before it, "[w]e credit Intervenors' assertion that vacating the orders would needlessly disrupt completion of the projects." *Vecinos I*, 6 F.4th at 1332. The same still holds true today.

In the unlikely event the Court finds some deficiency with FERC's action on remand, any of the arguments raised by Petitioner can easily be addressed on remand, like last time around. Further, the disruptive effects of vacating the orders authorizing the Project would far outweigh any potential harm that may occur if FERC's orders stayed in place while supplemental review, if ordered, is developed. Therefore, in the event the Court determines that remand is needed, remand, without *vacatur*, is the appropriate remedy.

---

details/2024/Glenfarne-Energy-Transitions-Texas-LNG-Announces-LNG-Tolling-Agreement-With-EQT/default.aspx.

[8] Press Release, Glenfarne Energy Transition, LLC, Glenfarne Energy Transition's Texas LNG Updates Commercial Status and Concludes Required Permitting for Final Investment Decision (Jan. 25, 2024), https://www.glenfarneenergytransition.com/news/press-release-details/2024/Glenfarne-Energy-Transitions-Texas-LNG-Updates-Commercial-Status-and-Concludes-Required-Permitting-for-Final-Investment-Decision-/default.aspx.

## CONCLUSION

The Court should deny the petitions for review.

Dated:  February 20, 2024                Respectfully submitted,

                                         */s/ Michael R. Pincus*
                                         Michael R. Pincus
                                         Paul Korman
                                         Mosby Perrow
                                         Van Ness Feldman, LLP
                                         2000 Pennsylvania Ave., NW, Ste. 6000
                                         Washington, D.C. 20006
                                         Phone:  (202) 298-1800
                                         Fax:  (202) 338-2416
                                         Email:  mrp@vnf.com
                                         Email:  pik@vnf.com
                                         Email:  mperrow@vnf.com

                                         *Attorneys for Texas LNG Brownsville
                                         LLC*

39

**STATUTORY ADDENDUM**

## TABLE OF CONTENTS

18 C.F.R. § 385.214 ................................................................... S-1

18 C.F.R. § 385.713 ................................................................... S-3

## 18 C.F.R. § 385.214

### § 385.214 Intervention (Rule 214)

(a) Filing.

(1) The Secretary of Energy is a party to any proceeding upon filing a notice of intervention in that proceeding. If the Secretary's notice is not filed within the period prescribed under Rule 210(b), the notice must state the position of the Secretary on the issues in the proceeding.

(2) Any State Commission, the Advisory Council on Historic Preservation, the U.S. Departments of Agriculture, Commerce, and the Interior, any state fish and wildlife, water quality certification, or water rights agency; or Indian tribe with authority to issue a water quality certification is a party to any proceeding upon filing a notice of intervention in that proceeding, if the notice is filed within the period established under Rule 210(b). If the period for filing notice has expired, each entity identified in this paragraph must comply with the rules for motions to intervene applicable to any person under paragraph (a)(3) of this section including the content requirements of paragraph (b) of this section.

(3) Any person seeking to intervene to become a party, other than the entities specified in paragraphs (a)(1) and (a)(2) of this section, must file a motion to intervene.

(4) No person, including entities listed in paragraphs (a)(1) and (a)(2) of this section, may intervene as a matter of right in a proceeding arising from an investigation pursuant to Part 1b of this chapter.

(b) Contents of motion.

(1) Any motion to intervene must state, to the extent known, the position taken by the movant and the basis in fact and law for that position.

(2) A motion to intervene must also state the movant's interest in sufficient factual detail to demonstrate that:

(i) The movant has a right to participate which is expressly conferred by statute or by Commission rule, order, or other action;

(ii) The movant has or represents an interest which may be directly affected by the outcome of the proceeding, including any interest as a:

(A) Consumer,

(B) Customer,

(C) Competitor, or

(D) Security holder of a party; or

(iii) The movant's participation is in the public interest.

(3) If a motion to intervene is filed after the end of any time period established under Rule 210, such a motion must, in addition to complying with paragraph (b)(1) of this section, show good cause why the time limitation should be waived.

(c) Grant of party status.

(1) If no answer in opposition to a timely motion to intervene is filed within 15 days after the motion to intervene is filed, the movant becomes a party at the end of the 15 day period.

(2) If an answer in opposition to a timely motion to intervene is filed not later than 15 days after the motion to intervene is filed or, if the motion is not timely, the movant becomes a party only when the motion is expressly granted.

(d) Grant of late intervention.

(1) In acting on any motion to intervene filed after the period prescribed under Rule 210, the decisional authority may consider whether:

(i) The movant had good cause for failing to file the motion within the time prescribed;

(ii) Any disruption of the proceeding might result from permitting intervention;

(iii) The movant's interest is not adequately represented by other parties in the proceeding;

(iv) Any prejudice to, or additional burdens upon, the existing parties might result from permitting the intervention; and

(v) The motion conforms to the requirements of paragraph (b) of this section.

(2) Except as otherwise ordered, a grant of an untimely motion to intervene must not be a basis for delaying or deferring any procedural schedule established prior to the grant of that motion.

(3)(i) The decisional authority may impose limitations on the participation of a late intervener to avoid delay and prejudice to the other participants.

(ii) Except as otherwise ordered, a late intervener must accept the record of the proceeding as the record was developed prior to the late intervention.

(4) If the presiding officer orally grants a motion for late intervention, the officer will promptly issue a written order confirming the oral order.

**18 C.F.R. § 385.713**

**§ 385.713 Request for rehearing (Rule 713)**

(a) Applicability.

(1) This section applies to any request for rehearing of a final Commission decision or other final order, if rehearing is provided for by statute, rule, or order.

(2) For the purposes of rehearing under this section, a final decision in any proceeding set for hearing under subpart E of this part includes any Commission decision:

(i) On exceptions taken by participants to an initial decision;

(ii) When the Commission presides at the reception of the evidence;

(iii) If the initial decision procedure has been waived by consent of the participants in accordance with Rule 710;

(iv) On review of an initial decision without exceptions under Rule 712; and

(v) On any other action designated as a final decision by the Commission for purposes of rehearing.

(3) For the purposes of rehearing under this section, any initial decision under Rule 709 is a final Commission decision after the time provided for Commission review under Rule 712, if there are no exceptions filed to the decision and no review of the decision is initiated under Rule 712.

(b) Time for filing; who may file. A request for rehearing by a party must be filed not later than 30 days after issuance of any final decision or other final order in a proceeding.

(c) Content of request. Any request for rehearing must:

(1) State concisely the alleged error in the final decision or final order;

(2) Conform to the requirements in Rule 203(a), which are applicable to pleadings, and, in addition, include a separate section entitled "Statement of Issues," listing each issue in a separately enumerated paragraph that includes representative Commission and court precedent on which the party is relying; any issue not so listed will be deemed waived; and

(3) Set forth the matters relied upon by the party requesting rehearing, if rehearing is sought based on matters not available for consideration by the Commission at the time of the final decision or final order.

(d) Answers.

    (1) The Commission will not permit answers to requests for rehearing.

    (2) The Commission may afford parties an opportunity to file briefs or present oral argument on one or more issues presented by a request for rehearing.

(e) Request is not a stay. Unless otherwise ordered by the Commission, the filing of a request for rehearing does not stay the Commission decision or order.

(f) Commission action on rehearing. Unless the Commission acts upon a request for rehearing within 30 days after the request is filed, the request is denied.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This document complies with the type-volume limit of D.C. Circuit Rule 32(e)(2)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 8,658 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Respectfully submitted,

*/s/ Michael R. Pincus*
Michael R. Pincus
Van Ness Feldman, LLP
2000 Pennsylvania Ave., NW, Ste. 6000
Washington, D.C. 20006
Phone:  (202) 298-1800
Email:  mrp@vnf.com

*Attorney for Texas LNG Brownsville LLC*

Dated:  February 20, 2024

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 15(c)(2) and 25(d) and D.C. Circuit Rule 15, I hereby certify that on February 20, 2024, the foregoing document was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all participants in the case.

Respectfully submitted,

*/s/ Michael R. Pincus*
Michael R. Pincus
Van Ness Feldman, LLP
2000 Pennsylvania Ave., NW, Ste. 6000
Washington, D.C. 20006
Phone:  (202) 298-1800
Email:  mrp@vnf.com

*Attorney for Texas LNG Brownsville LLC*

Dated:  February 20, 2024