Nos. 23-1174 (L), 23-1221, 23-1175 (L), 23-1222

# UNITED STATES COURT OF APPEALS
# FOR THE
# DISTRICT OF COLUMBIA CIRCUIT

Nos. 23-1174 (L), 23-1221
City of Port Isabel, et al., Petitioners
v.
Federal Energy Regulatory Commission, Respondent,
Rio Bravo Pipeline Company, LLC and Rio Grande LNG, LLC,
Interventors

Nos. 23-1175 (L), 23-1222
City of Port Isabel and Sierra Club, Petitioners
v.
Federal Energy Regulatory Commission, Respondent,
Texas LNG Brownsville, LLC, Intervenor

On Petitions for Review of Orders of the Federal Energy Regulatory
Commission

**BRIEF OF AMICUS CURIAE
BROWNSVILLE NAVIGATION DISTRICT OF CAMERON
COUNTY, TEXAS**

**IN SUPPORT OF (I) INTERVENOR RIO GRANDE LNG, LLC'S
PETITION FOR REHEARING OR REHEARING EN BANC, AND
(II) PETITION FOR PANEL REHEARING AND REHEARING EN
BANC BY INTERVENTOR TEXAS LNG BROWNSVILLE, LLC**

William J. Irwin
Rentfro, Irwin, & Irwin, PLLC
1650 Paredes Line Road, Suite 102
Brownsville, Texas 78520
(956) 542-4329
bill@rentfrolawfirm.net
Counsel for *Amicus Curiae*

1

# Table of Contents

Table of Authorities ................................................................................ 3

Glossary ................................................................................................ 4

I.     Identity and Interest of Amicus Curiae ................................................ 5

II.    Summary of Argument............................................................................ 6

III.   Argument.................................................................................................. 8

  A.   The Economic Importance of the LNG Projects.......................... 8

     1.   Job Creation and Workforce Development ............................ 8

     2.   Infrastructure Development and Tax Revenues .................... 8

  B.   Other Negative Impacts of Vacatur of the FERC Authorizations........ 12

     1.   Economic Losses and Community Impact.......................... 12

     2.   Loss of Investor Confidence and Future Development Prospects .... 14

  C.   The Court should consider the real-world consequences to BND and its surrounding communities of vacatur of the FERC authorizations....... 14

IV.    Conclusion ............................................................................................. 16

Certificate of Parties, Amici and Related Cases............................................. 18

Certificate of Compliance................................................................................ 20

Certificate of Counsel…………………………………………………………………21

Certificate of Service....................................................................................... 22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                    Page(s)

*Allied-Signal v. Nuclear Regulatory Comm'n*,                                    15
        988 F.2d 146 (D.C. Cir. 1993)

*National Parks Conservation Ass'n v. Semonite*,                                 15
        422 F. Supp. 3d 92 (D.D.C. 2019)

*North Carolina v. EPA*,                                                         15
        550 F.3d 1176, 1178 (D.C. Cir. 2008))

*Shands Jacksonville Med. Ctr v. Burwell*,                                       15
        139 F.Supp. 3d 240, 270 (D.D.C. 2015)

<u>Other Authorities</u>

William Dietrich, *Why Rio Grande LNG Project is a Boon for*                     6
*South Texas*, Rio Grande Guardian, September 19, 2024

Steve Taylor and Dayna Reyes, *USACE Awards Contract*                            7
*for Next Phase of Port of Brownsville's Ship Channel*
*Deepening Project*, Rio Grande Guardian, August 14, 2024

# GLOSSARY

**BIH**              Brazos Island Harbor Ship Channel

**BND**              Brownsville Navigation District of Cameron County, Texas

**FERC**             Federal Energy Regulatory Commission

**LNG**              Liquefied natural gas

**Rio Grande LNG**   Respondent-Intervenor, Rio Grande LNG, LLC

**Texas LNG**        Respondent-Intervenor, Texas LNG Brownsville, LLC

**USACE**            United States Army Corps of Engineers

## I.    IDENTITY AND INTEREST OF AMICUS CURIAE[1]

The Brownsville Navigation District of Cameron County, Texas (BND), situated on the Texas Gulf Coast, is a political subdivision of the State of Texas, created under Article 16, Section 59 of the Texas Constitution and operating under Chapters 60 and 63 of the Texas Water Code. It is the owner of the marine terminal facility commonly known as the Port of Brownsville, including the 17-mile Brazos Island Harbor (BIH) ship channel. Bordering the BIH ship channel are 13 heavy lift cargo docks and 6 liquid cargo docks. The BND is also the owner of more than 40,000 acres of land, which is leased or available to lease, primarily for marine commerce purposes. Of particular relevance to this brief are two leases from BND to Rio Grande LNG, LLC and Texas LNG Brownsville LLC, Intervenors in this proceeding, each for the purpose of constructing and operating liquified natural gas export facilities on BND property.

---

[1] Undersigned counsel for *amicus curiae* certifies that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than amici and their counsel have contributed money for this brief.

## II.   SUMMARY OF ARGUMENT

BND files this brief for the limited purpose of bringing to the Court's attention the serious impacts the vacatur of the FERC authorizations to Rio Grande LNG and Texas LNG would have on the BND, residents of South Texas, and the users of the Port of Brownsville. BND takes no position on the issue of whether there were flaws or missed steps in the FERC regulatory process. However, BND respectfully submits that this Court's decision to vacate FERC's authorizations, rather than remanding the cases for further review and analysis by FERC _without vacating the authorizations_, delays and potentially endangers two history-making projects that will bring billions of dollars of investment, significant increases to the tax base of the region, and thousands of well-paying jobs to Cameron County, Texas, historically one of the most impoverished areas in the United States.[2]

Moreover, vacatur of the FERC authorizations will impair the deepening of the Brazos Island Harbor Ship Channel (the "BIH Project"), which is a separate project, approved by the United States Congress and

---

[2] See William Dietrich, _Why Rio Grande LNG Project is a Boon for South Texas_, Rio Grande Guardian, September 19, 2024, https://riograndeguardian.com/dietrich-why-the-rio-grande-lng-project-is-a-boon-for-south-texas/

the United States Army Corps of Engineers after decades of study. The BIH Project is funded in part by the United States Congress, in part by the Intervenors seeking to construct and operate the projects, and in part by the BND.  In approving BIH Project, the United States Army Corps of Engineers found that the BIH Project fulfills the USACE's mission to maintain America's vital waterways, but will also generate immense economic benefits through increased trade, shipping efficiencies, and support for the region's industries.[3] The BIH Project, which is now currently under construction, promises to transform the economic profile of the Rio Grande Valley, irrespective of the economic impact of the two LNG projects. Impacts to the BND, its constituents, and the surrounding communities, as well as impacts to the public's interest in generating economic benefits through increased trade, shipping, and efficiencies, should be carefully considered by this Court in its review of Intervenors' Petitions for Rehearing.

---

[3] See Steve Taylor and Dayna Reyes, *USACE Awards Contract for Next Phase of Port of Brownsville's Ship Channel Deepening Project*, Rio Grande Guardian, August 14, 2024, https://riograndeguardian.com/usace-awards-contract-for-next-phase-of-port-of-brownsvilles-ship-channel-deepening-project/

## III. ARGUMENT

### A. The Economic Importance of the LNG Projects

#### 1. Job Creation and Workforce Development

The LNG projects will create thousands of jobs during both the construction and operational phases. These jobs will range from highly skilled engineering and technical positions to construction and administrative roles, providing a much-needed boost to the local labor market. Furthermore, the projects include commitments to workforce development programs that will equip residents with the skills necessary to participate in the energy sector, thereby fostering long-term employment opportunities. The LNG projects themselves will also generate substantial revenue to the BND which will aid in reducing operational and capital investment costs that would fall on the taxpaying constituents of the BND.

#### 2. Infrastructure Development and Tax Revenues

The Rio Grande LNG and Texas LNG projects are projected to invest upwards of $22 billion in capital improvements along the Brownsville Ship Channel. The LNG projects will both create thousands

of jobs and spur significant infrastructure development in the region, including improvements in transportation, utilities (including electric, natural gas, water, and wastewater facilities), and other critical services. This infrastructure will benefit not only the LNG projects but also the other tenants and users of the Port of Brownsville, and ultimately the broader community, enhancing the quality of life for residents. Additionally, the LNG projects are expected to generate substantial tax revenues for local governments, which can be reinvested in public services such as education, healthcare, and emergency services, further strengthening the community's resilience and prosperity.

In particular, vacatur of the FERC authorizations has a potentially devastating impact on the BIH Project. Planning to deepen the Port of Brownsville ship channel from 42 feet began in 2007 with a project feasibility study. In 2014, the U.S. Army Corps of Engineers (USACE) completed the feasibility study, finding the project to be in the national interest and recommending deepening the channel to 52 feet. In December 2016, the U.S. Congress authorized the BIH Project, making the BIH eligible to receive federal funding. Estimates for the total cost of BIH Project are in excess of $350 million. Under a public private

partnership agreement with BND and the US Army Corps of Engineers, Rio Grande LNG has agreed to pay 100% of the cost of the Phase I of the BIH project, which spans from the mouth of the Brownsville Ship Channel to the western boundary of the Rio Grande LNG lease site. In addition, based on having secured funding from Rio Grande LNG for Phase 1 of the BIH project, BND has secured $68 million in federal funding under the Infrastructure Investment and Jobs Act Appropriations Act for completion of Phase II of the BIH, which covers the remaining length of the ship channel. The remainder of the funding will come from a combination of state, federal, local, and private sources.

BND, itself, largely in reliance on the FERC authorizations issued for the LNG projects and the opinion of a prior panel in this case which remanded *without vacatur*, has already invested over $44 million of its own money in the BIH Project, with such investment being comprised of advance funding to the U.S. Army Corps of Engineers and in-kind contributions, such as improvement of spoil disposal areas critical to development of the BIH Project. Today, construction for Phase I of the BIH Project has commenced and is well underway. In addition, in August 2024, the US Army Corps of Engineers awarded a contract for Phase II

of the BIH project to Callan Marine, Ltd. with work on Phase II scheduled to commence this year, with an estimated completion date of June 2026. Vacatur of the FERC authorizations in this litigation puts the BIH Project in limbo and has potential to impact funding and the feasibility of the project.

The BIH Project itself will benefit not only the LNG projects, but also the many industries that use the channel daily, including ship builders, ship repair facilities, ship recyclers (which perform valuable services for the United States Navy, the federal Maritime Administration, and other public and private interests), importers and exporters of many commodities, including wind energy components, grain, steel and other metals, and other commodities. Without the financial contributions of Intervenors, the current funding model is unsustainable, and, at best, will shift an enormous financial need, in the hundreds of millions of dollars, onto the public. At worst, without the financial contributions of Intervenors, the BIH Project could be jeopardized in its entirety which would cause significant harm to (a) the BND, who has relied on FERC's authorizations and the opinion of a prior panel in this case in reviewing such authorizations, by committing

millions of dollars to the project, and (B) the local communities and its residents that stand to benefit so greatly from the LNG projects themselves and the development of the BIH Project. BND respectfully submits that any decision to vacate the FERC authorizations should be taken in the context of the short and long-term devastating financial impacts that would result to Intervenors, the BND, and to the local communities that the BND serves.

## B. Other Negative Impacts of Vacatur of the FERC Authorizations

### 1. Economic Losses and Community Impact

If the LNG projects are halted, the local community will suffer significant economic losses. The job opportunities, infrastructure improvements, and tax revenues associated with the LNG projects will be forfeited, leaving the region without a vital source of economic growth. This could lead to higher unemployment rates, reduced public services, and a decline in the overall quality of life for residents. Major cities from across South Texas, collectively representing nearly one million residents from Brownsville, Harlingen, Weslaco, McAllen, Edinburg, Mission, and

Laredo have all announced their support of the Rio Grande LNG project.[4] The mayors of these cities penned an editorial that noted the meaningful public engagement with the public, including hosting 26 open houses and investments in City of Brownsville academic institutions to support vocational training programs. The mayors also note this project is "pivotal for reversing a tide of poverty that has impacted generations of low-to-moderate income families which make up approximately 55% of Brownsville residents." The mayors further note that "the recent decision by the D.C. Circuit Court to vacate the FERC's authorization of the RGLNG project, citing procedural issues, poses a critical threat to the project and to the economic vitality of the region." The support for the LNG projects by the mayors of these communities, all of whom are keenly aware of environmental justice concerns, with each community being predominately comprised of Latino residents, is summarized below:

---

[4] See Various South Texas Cities, *South Texas Cities: We Support the Rio Grande Liquefied Natural Gas Project*, Rio Grande Guardian, September 30, 2024, www.riograndeguardian.com/south-texas-cities-we-support-the-rio-grande-liquified-natural-gas-project/

*A sustainable community is one where high-paying jobs are readily available; where access to even higher-quality of healthcare is available; and where families can stay united and experience quality of life together. It is not uncommon for younger adults to have to make the difficult choice of whether to stay in South Texas or leave the area for better paying opportunities. To grow a vibrant, sustainable, and resilient South Texas, the creation of jobs is fundamental in combating poverty and opening the path to home ownership and environmental resiliency.*

    2. <u>Loss of Investor Confidence and Future Development Prospects</u>

Halting the LNG projects could also undermine investor confidence in the region, deterring future investment in similar large-scale projects. This could have long-term consequences for the region's development, as potential investors may view the area as risky or hostile to business interests. Such a perception could stymie efforts to attract new industries and diversify the local economy, leaving the community vulnerable to economic stagnation.

**C. The Court should consider the real-world consequences to BND and its surrounding communities its decision to vacate the FERC authorizations.**

In considering whether to vacate a deficient agency action during remand, Courts should look to two factors: "the seriousness of the order's

deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal v. Nuclear Regul. Comm'n*, 988 F.3d 146, 150-151 (D.C. Cir. 1993). Neither factor is dispositive, as "there is no rule requiring either the proponent or opponent of vacatur to prevail on both factors." *National Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92 (D.D.C. 2019) citing *Shands Jacksonville Med. Ctr v. Burwell*, 139 F.Supp. 3d 240, 270 (D.D.C. 2015) (citing *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008)). In *National Parks Conservation Ass'n v. Semonite*, the Court found that despite deficiencies in the agency's action where "conducting a proper EIS… would potentially lead to a different substantive decision", the "real world consequences" of vacatur must be considered. Indeed, in that case, in considering the real-world consequences that would come from vacatur of the agency action, the Court held that the case should be remanded without vacatur. *National Parks Association* at 101.

In this case, as in *National Parks Association*, there are substantial real-world consequences that would stem from vacatur of the FERC authorizations for development of the LNG projects, not just to

Intervenors, but to the BND and the communities of the Rio Grande Valley that hunger for investments in their communities and the creation of well-paying jobs. The positive impacts that would come from the development of the LNG projects, including the construction of the BIH Project, cannot be overstated. The negative impacts of vacatur to the BND, which has relied on FERC's authorizations and a prior panel's decision to remand *without vacatur*, by expending millions of dollars and commencing construction on the BIH Project, would be devastating. Therefore, in connection with Intervenors' Petitions for Rehearing, BND would humbly request that this Court carefully consider the serious real-world consequences to BND and the surrounding local communities, that would surely follow from vacatur of the FERC authorizations.

## IV.   CONCLUSION

In the conclusion to its opinion this Court wrote: "We appreciate the significant disruption vacatur may cause the projects. But that does not outweigh the seriousness of the Commission's procedural defects." The Port respectfully submits that in weighing the consequences of vacatur, the devastating effects that would result from vacatur, specifically to the federally approved and funded BIH Project, which has already

16

commenced, suggest that the balance tilts against vacatur. The LNG projects and the BIH Project are of immense importance to the BND, local communities, the State of Texas, and the nation. They promise substantial economic benefits, contribute to national energy security, and enhance the United States' global competitiveness. Conversely, halting the LNG projects would have significant negative impacts on the BND and could undermine the region's long-term development prospects. For these reasons, the BND respectfully urges the Court to recognize the importance of the LNG projects, including their direct relation to the BIH Project, on the BND and other local communities, and to reconsider its decision to vacate the FERC authorizations.

Respectfully submitted,

Rentfro, Irwin, & Irwin, PLLC
William J. Irwin
1650 Paredes Line Road, Ste. 102
Brownsville, Texas 78521
956-542-4329
Attorneys for Amicus Curiae

/ s / William J. Irwin
_____
William J. Irwin

## CERTIFICATE OF PARTIES, AMICI AND RELATED CASES

Under Circuit Rule 28(a)(1)(A), BND submits this certificate as to parties, rulings, and related cases.

1. **Parties and Amici**. The parties who have appeared before the Court are listed in Petitioners' Circuit Rule 28(a)(1) certificate. To undersigned's knowledge no amici curiae have yet appeared in this matter.

2. **Rulings Under Review**. The Petitioners seek review of the following orders of the Federal Energy Regulatory Commission: Rio Grande LNG, LLC, 183 FERC 61,046 (April 21, 2023), R. 3011, JA1-176; Rio Grande LNG, LLC, 185 FERC 61,080 (October 27, 2023), R. 3080, JA177-238; Texas LNG Brownsville, LLC, 183 FERC 61,047 (Apr. 21, 2023); and Texas LNG Brownsville, LLC, 185 FERC 61,079 (Oct. 27, 2023).

3. **Related Cases**. Pursuant to Circuit Rule 28(a)(1)(C), the undersigned states that there are similar issues raised in the Rio Grande LNG case (No. 23-1174, et al.) and the Texas LNG case (No. 23-1175, et al.).

18

Date: October 23, 2024

 / s / William J. Irwin
Rentfro, Irwin, & Irwin, PLLC
William J. Irwin
1650 Paredes Line Road, Ste. 102
Brownsville, Texas 78521
(956) 542-4329
bill@rentfrolawfirm.net
Counsel for Amicus Curiae
Brownsville Navigation District
of Cameron County, Texas

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of this Court because this brief contains 2459 words, excluding the parts of the brief exempted from the type-volume limitation. This brief complies with the type face and type style requirements of the Federal Rules of Appellate Procure because this brief has been prepared in the proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

      / s / William J. Irwin
William J. Irwin

## CERTIFICATE OF COUNSEL

I hereby certify, pursuant to District of Columbia Circuit Rule 29(d) that the foregoing amicus brief is filed as a separate brief because of the unique perspective of BND as owner of the land where the LNG projects are sited, and as owner of the BIH ship channel. The impacts to BND and the BIH project are not fully or adequately addressed by any other party or amici.

/ s / William J. Irwin
William J. Irwin

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on October 23, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/ s / William J. Irwin
William J. Irwin